# H. WOODS, TO USE, v. N. A. IRWIN, EXRX.

## ESTATE OF NINIAN IRWIN, DECEASED.

APPEALS BY J. W. IRWIN ET AL. FROM THE COURT OF COMMON PLEAS AND THE ORPHANS' COURT OF MONTGOMERY COUNTY.

Argued February 3, 1891—Decided April 6, 1891.

[To be reported.]

1. When a petition for the opening of a judgment has been met by an answer denying some of the facts alleged and demanding proof of the others, a decree granting the relief prayed for will be irregular, if the record does not show either that the petition was supported by proofs or that the plaintiff consented to the hearing without them.

2. Creditors of a decedent's estate, not alleging fraud or collusion, have no standing to ask that a judgment confessed by the executor be opened on the ground that the debt was barred by the statute of limitations at the time of the confession, even though the estate be insolvent and their dividends out of it would be reduced thereby.

3. It is not a fraud in law for an executor to confess a judgment for a bona-fide debt barred by the statute; if sued therefor, he has a right to plead the statute, but is not bound to do so; and other creditors have no right to interfere except for fraud or collusion against them: dicta in Lewis v. Rogers, 16 Pa. 18, and Clark v. Douglass, 62 Pa. 408, explained.

Statement of Facts.

4. A judgment should not be opened for the sole purpose of affording an opportunity to plead the statute of limitations to a defendant who has already had his day in court: such cases as Herman v. Rinker, 106 Pa. 121; Sossong v. Rosar, 112 Pa. 197; and Ellinger's App., 114 Pa. 505, rest upon the fact that the defendants therein had had no hearing.

5. The plea of the statute, though no longer an object of animadversion, is not yet the object of favor; speaking for myself, I cannot regard the statute, unaided by any equitable conditions or circumstances, as other than a dishonest defence, for which alone a judgment should never be opened: Per Mr. Justice MITCHELL.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

Nos. 100, 101 July Term 1890, Sup. Ct.; courts below, No. 19 December Term 1886, C. P.; number and term in O. C. not shown.

N. Adeline Irwin having filed her second account as executrix of the will of Ninian Irwin deceased, *Mr. Jacob V. Gotwals* was appointed auditor by the Orphans' Court, to pass upon certain exceptions filed to said account, and to make distribution of the moneys in the hands of the accountant.

Soon after the appointment of the auditor, to wit, on October 12, 1886, suit was brought against the accountant in the Court of Common Pleas, by Hannah Woods to the use of J. W. Irwin, and Milton Stewart, trustee, for the recovery of the value of certain railroad bonds alleged to have been loaned to the decedent by Hannah Woods and not returned. On November 23, 1886, the plaintiffs' declaration was filed, averring a borrowing from Hannah Woods by Ninian Irwin of bonds of the Danville etc. Railroad Company of the face value of $5,000, on October 2, 1874, with a promise to return the same in three months from that date; and a like borrowing of other bonds of the same company of the face value of $10,000, on October 15, 1874, to be returned in six months thereafter; averring also breaches of the promises to return the bonds, to the damage of the plaintiffs in the sum of $15,525. On the same day a rule upon the defendant to plead was issued. On November 26, 1886, there was placed on file a written agreement, dated November 24, 1886, signed by the respective counsel of the plaintiffs and the defendant, whereby the defendant, N. Adeline Irwin, executrix, etc., confessed judgment in favor of

Opinion of Court below.

the plaintiffs for $15,525, with costs of suit; and judgment was entered accordingly.

The first sitting of Mr. Gotwals as auditor in the estate of Ninian Irwin, deceased, was held on December 28, 1886. At that meeting, the judgment confessed by the executrix in favor of Hannah Woods, for use, etc., was presented as a claim against the estate. The allowance of the claim was objected to by another judgment creditor, upon the ground that the judgment was obtained for a debt that was barred by the statute of limitations at the time of its confession, and that it was not good as against. the creditors of the decedent. Some testimony was then taken showing that in 1881, before Mr. J. Wright Apple, who had been appointed auditor to make distribution upon the first account of the executrix, the Woods claim was presented for allowance; that it was noted upon the auditor's minutes, and certain receipts, evidencing the loaning of the bonds to Ninian Irwin and his engagement to return them, one of which had indorsed thereon an extension of the time of return to June 1, 1875, were copied in those minutes, but that this claim was not passed on in the former audit, an agreement of all parties having been made that the entire fund then for distribution should be awarded to one of the creditors as a preferred claimant. A second sitting was held by auditor Gotwals on July 11, 1887, after which proceedings before him were suspended.

On August 1, 1887, J. M. Albertson and George N. Corson, judgment creditors of Ninian Irwin, deceased, filed a petition in the Court of Common Pleas, reciting the prior proceedings in the Orphans' Court and before the auditors, and averring that the suit of Hannah Woods, for use, etc., against the decedent's executrix was instituted, and judgment was confessed therein in favor of the plaintiffs, for the express purpose of preventing the petitioners, as creditors, from pleading the statute of. limitations or making any other legal defence they might have against the allowance of the Woods claim out of the decedent's estate; that said claim was long since barred by the statute of limitations, and therefore the institution of the suit, the confession of judgment therein, and the presentation of the same before the auditor were a fraud upon the petitioners and an injury to their rights as creditors; that the entire proceed-

ings in the suit were without any notice to them, and the judgment, if allowed to stand and participate in the distribution of the estate, would be " a great fraud upon the petitioners, by preventing them from making the defence of the statute of limitations, or any other defence against said claim which may legally exist; " praying that the judgment might be opened and the petitioners allowed to defend against a recovery upon said claim; that an issue would be awarded to determine whether the claim was barred by the statute of limitations at the time of issuing the summons in the suit, and whether the plaintiffs had any legal claim against the decedent's estate; and for general relief.

Upon the filing of this petition, a rule to show cause why the judgment should not be opened and an issue awarded as prayed for, was granted against objection by the plaintiffs' counsel; exception.[1]

On October 10, 1887, the plaintiffs in the judgment, filed an answer in response to the rule, making the following averments:

1. The said court has no jurisdiction to take any action upon said petition.

2. The above recited judgment was obtained after suit brought for a just and legal claim then existing and not barred by the statute of limitations, as alleged in said petition.

3. The allegations of fraud in the confession of said judgment are denied absolutely, the said judgment having been regularly and honestly obtained for an honest and valid claim against said decedent's estate, without any intention to defraud said petitioners.

4. The other facts alleged in said petition are not admitted, but due and legal proof thereof is demanded.

After argument, apparently upon petition and answer, the court, YERKES, P. J., 7th district, specially presiding, on January 7, 1888, filed the following opinion:

If it had not been for the bringing of this suit in the Court of Common Pleas, and the confession of judgment thereon by the defendant executrix, there is no doubt that the statute of limitations could have been interposed in the Orphans' Court, to the claim. Yorks' App., 110 Pa. 69, has settled this beyond controversy. This application, however, is in the Common

Opinion of Court below.

Pleas, where the judgment was confessed and entered. It is conceded that the estate is insolvent.

It is no longer a matter of dispute that a judgment by confession should be opened to admit the plea of the statute of limitations, and for that purpose alone: Herman v. Rinker, 106 Pa. 121; Sossong v. Rosar, 112 Pa. 200; Ellinger's App., 114 Pa. 505. In Sossong v. Rosar, Mr. Justice GREEN says: " It is a very long time since this court ceased to regard the plea of the statute of limitations as an unconscionable plea. We have commended it as a meritorious defence, and have described it as a statute of repose tending to the peace of families and the quieting of titles. The courts, both of England and this country, including this court, have carried it into the equity practice and followed the law in all analogous cases, upon principles of the soundest public policy." He describes it as " a perfectly lawful and proper defence." In Ellinger's Appeal, it is said that under recent decisions it is a good cause for opening a judgment and letting a defendant into a defence that prima facie at the time of entry of judgment the claim was barred by the statute of limitations.

It is said that an executor or administrator is not bound to plead the statute. This proposition has frequently been affirmed by the highest authority. The cases are collected in Ritter's App., 23 Pa. 95, and it was there said that when the parties in interest made no objection, the executor was clothed with a discretion; and if he paid a claim, interested parties appearing to take no interest in the estate, he would be deemed as having acted as their trustee and agent, and he would not be liable for the money thus paid, although the claim was barred by the statute of limitations. That was a solvent estate.

That case, however, seems to qualify the above proposition where the estate is insolvent, and approves Kittera's Est., 17 Pa. 416. The latter case says : " At a time when the statute of limitations was viewed with disfavor, it was held that an executor or administrator was not bound to plead it. This rule was only applicable to actions in which the personal representative of the decedent was intrusted with the management of the defence and in which the pleading was necessarily regulated by his own discretion. It has no place in a proceeding before the Orphans' Court, where the parties lawfully entitled to the

fund are recognized as having a standing in court, and must, as a consequence of that condition, be permitted to protect their respective interests in their own way. It follows, that where the fund is not sufficient to pay all, each creditor has a right to oppose any other claimant, by showing payment of the debt, that it is barred by the statute of limitations, that the lien has expired (if the claim be upon the fund arising from the sale of real estate), or any other defence exists against it, and these rights do not depend upon the will of the personal representative of the decedent."

I have quoted this case at some length, as it seems to show that Yorks' Appeal did not cut up the only anomaly in the law as to the right to present "a perfectly lawful and proper defence" in these respective courts; for it appears that while the rights of creditors to oppose any of the defences named in the Orphans' Court, do not depend upon the will of the representative of the decedent, he may yet step across into the office of the prothonotary of the Court of Common Pleas, and secretly confess a judgment upon a claim pending in the Orphans' Court, and forever bar the creditors from setting up a defence which they might successfully interpose, in the Orphans' Court, despite anything he might do.

It has undoubtedly been declared, frequently, that creditors can attack a judgment collaterally only for collusion or fraud, and it is said, even, that this is fortunately well settled, the reason for it being that it is the logical and inevitable consequence of the conclusive effect of the judgment of a court of competent jurisdiction. Yet it is elsewhere said that there is a distinction between a judgment obtained in due course of law and one obtained by consent of the debtor. The law presumes the former to be founded upon a valuable consideration and rendered for a just debt, but indulges no such presumption in favor of the latter: Bump on Fraud. Conv., 539. But, notwithstanding the positive assertion of the rule of law that a judgment cannot be attacked by creditors except for fraud or collusion, we are made to doubt whether such is the law, without qualification; for the same cases which assert this rule, do so with a degree of reservation.

In Lewis v. Rogers, 16 Pa. 21, C. J. GIBSON said: "A debtor, or his representative, may have a judgment against him

Opinion of Court below.

opened on grounds laid, and when let into a defence on the merits, reduce or discharge it.   Nor will I say that if he were to refuse to move for the benefit of his creditors, they would not be permitted to move in his name.   An insolvent man is not suffered to give away his property by means of a judgment which, though proper at first, has become a security for less than the amount of it."   In Clark v. Douglass, 62 Pa. 416, Justice SHARSWOOD said : "No doubt creditors might show that a debtor, who had a good defence and ground for opening a judgment confessed or by default, pertinaciously and wilfully refused to make application or allow his name to be used for that purpose, for it would be very cogent evidence that if the original judgment was not collusive, it was kept on foot for the purpose of defrauding them.   Indeed, I am not sure that a court in the exercise of their equitable powers would not in such a case allow the creditors to come in, open the judgment and take defence in the name of the defendant; such appears to have been the opinion of Chief Justice GIBSON." After quoting Lewis v. Rogers, supra, he proceeds : "Nothing can be more just, consistent and symmetrical than the system of administering the law here indicated ; for, while it gives a remedy for every wrong, it saves the records of the court from the strange anomaly of a judgment found by the verdict of a jury to be a fraud upon the defendant, yet standing as a perfectly valid security which can be enforced against him."

These declarations are indicative of the purpose of the Supreme Court to declare, when occasion should demand it, that to be the law which so evidently ought to be the law.   If such be the law, is it applicable to the facts of this case ?   They do not present exactly the case put by Justice SHARSWOOD, of a pertinacious and wilful refusal to apply to open a judgment, but in our opinion a state of facts equally as objectionable upon the part of one, who, as the trustee and agent of creditors, should give them a fair opportunity to be heard in contesting rival claims, and who should not take positive steps to obstruct an investigation.   After a settlement had been filed showing a balance for distribution, and the appointment of an auditor by the Orphans' Court, this claim, which, singularly enough, it is now alleged had already been legally established in the Or-

Opinion of Court below.

phans' Court, was put in suit in the Common Pleas, and the executrix confessed judgment under circumstances that point to a degree of haste not required for any apparent purpose.

In explanation, it is said that the claim had been presented at a former audit, unobjected to by creditors, and was believed to be just, and the judgment was confessed to save costs. So far as the record shows, although the claim was presented before a former auditor in the same estate, it does not clearly appear that the creditors had an opportunity to object to it, the auditor's report being very unsatisfactory, if not worthless, for the purpose of showing what occurred before him. It seems that the only fund then for distribution was the proceeds of realty, which by agreement was awarded to a single creditor, and consequently no further account was taken of the other claims. Had there been a request, no doubt an auditor's meeting could have been held before the claim was disposed of in the Common Pleas. Shortly after the judgment was confessed, and long before the suit could have been prosecuted to judgment by the ordinary course of law, a meeting was had, when the claim could if unobjectionable have been readily established. In the meantime, the costs would have been trifling. The successive and rapid steps to obtain a result easier of accomplishment, and actually asserted to have been accomplished in the Orphans' Court, unobstructed, in fact facilitated by the executrix, whose present attitude shows a decided disinclination to take any step to relieve the creditors from the predicament her act has placed them in, would appear to be at least as cogent evidence as that which Justice SHARSWOOD in Clark v. Douglass thought showed either collusion or fraud.

But it is not charged by the petitioners, as we understand them, that there was actual fraud, and they do not ask us to grant an issue to determine whether there was such fraud, under the proper practice. They disclaim any belief that counsel in the case would have permitted this. But, they urge that, while the purpose may have been to protect or favor a particular creditor by legal means, yet the deprivation of the right which they clearly had, in the Orphans' Court, to plead the statute of limitations, amounted to a legal fraud upon them; they assert, however, that the circumstances of the case and the history of the change in the law as wrought by the decision

Opinion of Court below.

of Yorks' Appeal point conclusively that the intention was to avoid, in a legal way, the effect of that decision.

Whether such was or was not the intention, it undoubtedly is the result, unless this judgment can be opened. As every sane person is presumed to intend the natural and probable consequences of his own deliberate act, it would seem that such must have been the intent. But in an inquiry into legal fraud, the intent is immaterial. The entire innocence of the act may be conceded; what are the consequences? is the inquiry. Fraud in law consists in acts which, though not fraudulently intended, yet as their tendency is to defraud creditors, if they vest the property of the debtor in his grantee (or beneficiary), are void for legal fraud: McKibbin v. Martin, 64 Pa. 352. It includes such contracts or acts, as, though not originating in any actual evil design or contrivance to perpetrate a fraud, yet by their tendency to deceive or mislead others, or to violate private or public confidence, are prohibited by law: See also 1 Story's Eq. J., 7.

It is a very serious question, in the light of recent decisions, whether an executor is not now bound to plead the statute of limitations, and, considering the favor with which the plea is now regarded by the courts, whether it was not the legal duty of the executrix of the estate of Ninian Irwin, under the peculiar circumstances of the case, to plead the statute, or to refrain from confessing judgment, and to await the approaching auditor's meeting, when an opportunity for all the creditors to have a hearing in the Orphans' Court would have been given. Equity ought to require this. When she voluntarily and, as we think, hastily confessed the judgment, it was a violation of that confidence which the creditors had a right to repose in and expect from her, in her official character as executrix. In England, it is said that in all cases of this nature where the consideration is a pre-existing debt, the whole transaction must be free from doubt: May on Fraud. Conv., 110.

It should be kept in mind that this case differs from those cases in which one creditor may be preferred by a confession of judgment, although it be made with the purpose and effect of defeating another equally meritorious. In those cases, it is said the injury to one is an incident necessarily flowing from the legal protection of the other, who could not otherwise be protected. Here the creditors did not stand upon an equality.

Opinion of Court below.

The claims of the petitioners appear to be valid and entitled to participate in the fund, while that of the plaintiff was prima facie subject to a defence which was a legal, meritorious and complete bar. By the confession of judgment the creditors were deprived of their legal right to plead this. I cite a distinction which was made in a case of somewhat similar character: Forrester v. Hanaway, 82 Pa. 224. We do not understand that, in the cases of Lewis v. Rogers and Clark v. Douglass, C. J. GIBSON or Justice SHARSWOOD regarded actual fraud as the ground for their assertion that it becomes a duty to let a creditor in to make a defence, where the debtor wilfully refuses to make the application. Nor does C. J. GIBSON base his expression upon fraud at all.

It is urged that there should not be an issue granted in this case, because the facts will show that the claim is not barred by the statute. Such a question is within the province of a jury and the court cannot dispose of it. At the argument, the counsel for plaintiff stated that had the statute been pleaded before the first auditor, the plaintiff was prepared to show payments on account to toll the running of the statute. The record shows that the judgment was confessed for the full amount claimed in the declaration. Subsequently, counsel explained this statement by saying that it was not intended to be understood as referring to payments which would reduce the amount of the judgment as it appears of record, but that it referred to payments of interest not included in the judgment. Counsel for the petitioners have frankly accepted this explanation as embracing what was meant to be said. The omission at the argument to qualify the statement was evidently an inadvertent mistake. Thus qualified, the statement made at the argument becomes unimportant as an admission to affect (as it otherwise would) the merits of the controversy in this case.

It is further said, on behalf of the plaintiff, that the record shows that the claim was duly established and the running of the statute tolled by virtue of the proceedings before the first auditor, J. Wright Apple, Esq. It is possible that there may be proof to sustain this position before a jury, but we cannot find so from the facts before us. The claim appears to have been presented at a time when there was no fund for its payment. A memorandum of its presentation was made by the

Opinion of Court below.

auditor, which now appears inserted between two pages of the testimony of a witness who was examined as to other matters. It is clear it was not presented in the order which the report shows. At the next meeting, the entire fund was allotted to another creditor by agreement. Naturally, the creditors had every reason to await an opportunity to investigate and make their full objection at the next meeting of the audit, when the claimant might have some standing against the fund for distribution. They were deprived of that opportunity, as we think, by a breach of duty and confidence on the part of the executrix.

We are of opinion that, under the facts of the case, the plea of the statute of limitations being a meritorious, commendable, legal and proper defence, injustice would be done the petitioners should we allow the conduct of the defendant in confessing and in neglecting and refusing to apply to open the judgment, to deprive them of their legal right to use the plea.

And now, to wit, January 7, 1888, it is ordered that the judgment be opened and that the defendant be let into a defence, the petitioning creditors having permission to appear in the name and behalf of the defendant and to make defence to the suit. It is further ordered that an issue be framed upon the declaration now on file, to which the plea of non-assumpsit infra sex annos, and payment with leave, etc., may be entered; exception.[2]

—An issue formed in accordance with the order therefor, was tried on October 15, 1888, before WEAND, J.

Before commencing the trial, counsel for plaintiffs moved that the decree opening the judgment and granting the issue be vacated, because the court had no jurisdiction to open the judgment and grant the issue as framed in the case.

By the court: Motion overruled; exception.[3]

The plaintiffs then made an offer to prove the loan to Ninian Irwin of the bonds mentioned in the declaration, and that he fraudulently assigned them and put them out of his possession, so that he could not comply with the obligation given for their return, but that no notice thereof was given to Hannah Woods until after his death; to be followed by evidence that this claim was presented to the executrix of Ninian Irwin, shortly after his death in 1877, and was conceded by her to be correct; that it was presented in June, 1881, and proved without objection

### Statement of Facts.

before an auditor in the estate of said decedent, and that there was a persistent and continued demand upon the executrix for this money; and suit was threatened and at her request suit was postponed, because the claims were admitted to be correct and just, and there was no reason why the expense and inconvenience should be incurred.

Objected to.

By the court: Offer overruled; exception.[4]

No further testimony being offered, the jury by direction of the court, returned a verdict for the defendant. A rule for a new trial having been discharged, judgment was entered on the verdict.

On January 3, 1889, the proceedings in the Orphans' Court before the auditor, Mr. Gotwals, which had been suspended pending the above stated proceedings in the Court of Common Pleas, were resumed, and the record of the proceedings relative to the opening of the judgment was put in evidence. The auditor subsequently reported that the controversy respecting the Woods judgment was ended by the final verdict in the Court of Common Pleas, by which that judgment was declared invalid and set aside. He accordingly disallowed the claim thereon.*

Exceptions to the report were dismissed by the court, WEAND, J., and the report confirmed.

Subsequently J. W. Irwin, and Milton Stewart, trustee, took the appeal at No. 100 July Term 1890, from the Court of Common Pleas, assigning for error therein:

1. The order granting the rule to open the judgment.[1]
2. The order opening the judgment and granting an issue.[2]
3. The refusal of plaintiffs' motion.[3]
4. The refusal of plaintiffs' offer.[4]

They also took the appeal at No. 101 July Term 1890, from the Orphans' Court, specifying, inter alia, that the court erred:

1. In confirming so much of the auditor's report as disallowed the claim of the appellants.

---

* Other portions of this report were before the Supreme Court in Irwin's Est., 133 Pa. 1, on an appeal taken by N. Adeline Irwin, concerning the disallowance of a credit claimed in her account, and the rejection of a claim presented by her to the auditor.

Arguments.

*Mr. Montgomery Evans*, for the appellants:

1. In the petition to open the judgment, fraud was not charged directly or indirectly, but by inference only. But fraud, as a ground for avoiding a decree, must be averred distinctly and positively, and not left to be inferred from circumstances: Groff v. Groff, 14 S. & R. 181; Kensington etc. Turnpike Co., 97 Pa. 260; Hostetter v. Pittsburgh, 107 Pa. 419. The petition was not sustained by evidence. The allegations from which fraud was to be inferred were denied by the answer, and it was necessary for the petitioners to present evidence clearly supporting them: Horton v. Weaver, 39 Leg. Int. 99. But, even though a claim be barred by the statute of limitations, a judgment confessed therefor cannot be attacked by other creditors: Keen v. Kleckner, 42 Pa. 529; Brown's App., 86 Pa. 524. Creditors by proving collusion may avoid the effect of a judgment as to themselves, but they can attack it collaterally for collusion only: Meckley's App., 102 Pa. 536; Clark v. Douglass, 62 Pa. 408; Second N. Bank's App., 85 Pa. 528; Thompson's App., 57 Pa. 175; Dougherty's Est., 9 W. & S. 189; Sheetz v. Hanbest, 81 Pa. 100; Lennig's App., 93 Pa. 301; 1 Tr. & H. Pr., § 803 et seq.; Drexel's App., 6 Pa. 272.

2. The practice is to try collusion by a collateral issue, but matter of defence which the defendant has a right to set up, by an issue in the cause: Gallup v. Reynolds, 8 W. 424. The petitioners did not ask for an issue to determine whether the judgment was collusive, so that they might avoid its effect as to them while it would remain valid as to the defendant, the executrix and devisee of the decedent; but, strangers to the judgment, they asked that it be opened to determine whether the defendant by asserting a statutory defence could escape payment of the demand. The judge below, perceiving the difficulty in their way, attempted to avoid it by introducing a new practice: he opened the judgment and awarded an issue framed upon the original declaration, with pleas of non-assumpsit infra sex annos and payment with leave. To justify this course, the court held that there is a distinction between a judgment obtained in due course of law and one obtained by the consent of the debtor. This court has held exactly the contrary: Clark v. Douglass, 62 Pa. 408; Lennig's App., 93 Pa. 301.

3. The dicta quoted by the court below from Lewis v. Rogers, 16 Pa. 18, and Clark v. Douglass, supra, refer to a state of facts not appearing in this case. This claim was presented before an auditor in 1881 and not objected to. The appellants never objected to it until December 28, 1886, and their first objection to the judgment was when they filed their petition to open it. They never requested the executrix to contest the claim, or to apply for the opening of the judgment; and there is no pretence that the claim was not valid at the time of the decedent's death, and entitled then to share in a distribution of the estate. The attempt of the appellants is now to obtain a larger proportion of the estate than they were entitled to at the death. But it is settled that an executor is not bound to plead the statute against a just debt, if the parties in interest have not notified him to do so: Ritter's App., 23 Pa. 95; Fritz v. Thomas, 1 Wh. 66; McFarland's Est., 4 Pa. 149; Smith v. Porter, 1 Binn. 209; Steel v. Steel, 12 Pa. 64. This rule is unaffected by Yorks' App., 110 Pa. 69. It cannot be a fraud on other creditors to confess judgment for a valid debt: Keen v. Kleckner, 42 Pa. 529; Second N. Bank's App., 96 Pa. 460; Lennig's App., 93 Pa. 301; Second N. Bank's App., 85 Pa. 528; Miner's Trust Co. Bk. v. Roseberry, 81 Pa. 309. See also Thompson's App., 57 Pa. 175.

4. The court erred upon the trial in not admitting our offer. If this had been done, we would have shown that the decedent fraudulently converted the bonds loaned to him, and that this fraudulent conversion was not discovered until after his death. The time when the statute began to run would then be for the decision of the jury, upon the question when the fraud was, or could reasonably have been discovered: Hughes v. Bank, 110 Pa. 428; Bricker v. Lightner, 40 Pa. 199; Morgan v. Tener, 83 Pa. 305; Wickersham v. Lee, 83 Pa. 416. In ruling out the testimony, the court held that the presentation of the claim to the first auditor did not toll the statute. This court has never decided that question: Irwin's Est., 133 Pa. 1. It has decided that the award of a dividend upon a claim will do so: Reber's App., 125 Pa. 20. The statute applies in terms to suits in the Court of Common Pleas, and it is applied in the Orphans' Court by analogy. In the former, the mere bringing of a suit, without filing a declaration, tolls the statute: Hemp-

hill v. McClimans, 24 Pa. 367.   Therefore, whatever action in the Orphans' Court is analogous to the bringing of a suit, must have the same effect.   The presentation of the claim to the court or an auditor is strictly analogous to issuing a summons.

*Mr. George W. Rogers* and *Mr. Charles Hunsicker,* for the appellees:

The power to open a judgment has never been denied in Pennsylvania, and it is controlled only by sound discretion : Earley's App., 90 Pa. 321; Wernet's App., 91 Pa. 319.   It is within the discretion of the court to open a judgment to permit the statute of limitations to be pleaded: Herman v. Rinker, 106 Pa. 121 ; Sossong v. Rosar, 112 Pa. 197 ; Ellinger's App., 114 Pa. 505.   That defence is a meritorious one: Sossong v. Rosar, 112 Pa. 197 ; and creditors have the right to plead it: Ritter's App., 23 Pa. 95 ; Kittera's Est., 17 Pa. 416.   It is not the law that the executor of an insolvent testator, by confessing a judgment in the circumstances of this case, can make that which the law declares to be no claim, good against the other creditors and render them powerless to prevent its allowance : Lewis v. Rogers, 16 Pa. 21 ; Ritter's App., 23 Pa. 95.   As was held in the cases cited, creditors can move if the executor refuses to do so.   What stronger refusal to protect them can there be than a hasty confession of judgment upon a barred claim, in order that it may be used in another court where its validity cannot be questioned?   The appellants have argued the case as if it were necessary to establish collusion or fraud by actual proof.   But this is unnecessary, for fraud in law is just as obnoxious and hurtful as fraud in fact: McKibbin v. Martin, 64 Pa. 352; 1 Story Eq. Jur., c. 7.

WOODS v. IRWIN.

OPINION, MR. JUSTICE MITCHELL:

The action of the court below in opening the judgment was irregular, insomuch as it appears to have been done without evidence.   There was a petition setting out certain facts on which petitioners asked to have the judgment opened, to which the plaintiff filed an answer, denying some of the facts alleged and demanding proof of the others.   No depositions appear to

have been taken nor any other evidence presented, so far as the
record discloses, and the arguments seem to concede that the
court acted on the petition and answer alone. It may be that
this was done by general consent, but if so the fact does not
appear on the record. We notice the matter so as to avoid any
implication of approval of such a course, unless by consent.
The discretion of courts to open judgments is very extensive,
but it must rest on a foundation of competent evidence.

But a much deeper objection is that the court was without
jurisdiction in the proceeding. There was no one before it
asking for its action who had any standing. Neither plaintiffs
nor defendant desired the judgment opened, and the court had
no right to do it on motion of a stranger not alleging fraud or
collusion. True, the petitioners were creditors of the dece-
dent's estate, and the judgment tended to diminish the fund
for their payment. But this of itself gave them no right to in-
terfere. It has long been settled that a judgment can only be
attacked by creditors or other strangers for fraud or collusion,
and as already said neither is alleged in the present case. The
fact of there being a fund in the Orphans' Court which will be
affected by the present judgment does not alter the general
rule. Mere diminution of the fund gives no standing in that
court, more than in any other. See Law's Est., 140 Pa. 444,
opinion filed at present term.

The learned counsel for the appellees, seeing the pinch of
the case upon this point, have argued that it was a fraud in
law for the executrix to confess the judgment. But this con-
tention is not tenable. A debt barred by the statute of limita-
tions is still a debt, though the remedy upon it be suspended
or gone. Its force as an existing obligation, even though only
moral, is such that a promise to pay is binding without other
consideration. And the debtor may make such promise with-
out regard to its effect upon other parties, even though credi
tors. In Clark v. Douglass, 62 Pa. 408, this court, through
SHARSWOOD, J., said that it was now fortunately well settled
that creditors have no right to impeach a judgment on any
other ground than collusion; and in Meckley's App., 102 Pa.
542, it was held that a judgment honestly confessed to a wife
by an insolvent was good against creditors. If not for more
than was due, it was not fraudulent, either in fact or in law,

## Opinion of the Court.

though there had been no agreement for interest on the money advanced by the wife, and such interest had been included in the judgment. In Keen v. Kleckner, 42 Pa. 529, it was expressly held that a debtor, even though insolvent, was not bound to interpose the defence of the statute of limitations (or the statute of frauds) and might confess judgment for a claim so barred if the claim were honest, even though other creditors were defeated thereby. See, also, Brown's App., 86 Pa. 524, and the analogous case of the defence of usury in Second N. Bank's App., 96 Pa. 460.

These cases establish beyond controversion that if Ninian Irwin, the debtor, had been alive in 1886, he could have confessed this judgment, and no creditor could have impeached it as a fraud in law. It is equally well settled that his executrix stands so far in his shoes that if satisfied the claim is honest she is not bound to plead the statute of limitations. As there was no other defence, it follows that her confession of judgment was a prudent and proper course. She was doing no more than the testator might lawfully have done had he been alive. The debt was a moral obligation which either the debtor, or his executrix, acting in his place after his death, could convert into a legal one, and creditors have no more standing to complain in the one case than in the other.

It is true that in Lewis v. Rogers, 16 Pa. 18, GIBSON, C. J., says: " Nor will I say that if he (the debtor) were to refuse to move for the benefit of his creditors, they would not be permitted to move in his name; " but he was speaking of fraud, as the next sentence shows: " An insolvent man is not suffered to give away his property by means of a judgment which, though proper at first, has become a security for less than the amount of it; " and his remark referred more to the form of the creditor's proceeding than to his right, i. e., an attack on the judgment directly in the debtor's name, and not collaterally in his own. So, also, Justice SHARSWOOD remarks in Clark v. Douglass, 62 Pa. 408, 415, 416, that the creditors of an insolvent could even against a judgment set up anything that the debtor could, had reference to fraud, as is apparent from the context and from the facts of the case he had in hand. Even as dicta, these remarks were not intended to trench in any way on the settled rule, expressly reiterated in both those

cases, that creditors can only interfere for fraud or collusion against them.

This result is not at all affected by the fact that the creditors in the Orphans' Court will have the fund diminished by the judgment. There is nothing in the doctrine of Yorks' App., 110 Pa. 69, which is relevant. The right of the executrix to plead the statute of limitations in the Orphans' Court was established in that case. She has that right there and here. Creditors have no such right here, and she is not bound to assert hers for their benefit. As already shown, the debtor himself might confess judgment, no matter how much it diminished the creditor's chance of payment, and his representative stands in this respect in his place.

As these views upon the status of the petitioners are decisive of the case, it is perhaps not necessary to consider the ruling of the court below on the question of opening the judgment to let in the defence of the statute of limitations, but it may be well to do so briefly, to avoid misconstruction. The learned judge, in saying that it is no longer matter of dispute that a judgment should be opened for that purpose alone, went a step beyond any of the cases. The most advanced case that we have been referred to does not decide that the court *should*, but only that it *may* do so. The plea of the statute, though no longer an object of animadversion, is not yet the object of favor. As a matter of public policy, recognizing that in the ordinary course of business life just debts are pursued with diligence, and that witnesses die and papers are lost, the statute is one of repose and protection. But, speaking for myself, I cannot regard the statute, unaided by any equitable conditions or circumstances, as other than a dishonest defence, for which alone a judgment should never be opened. But, however that may be as a matter of discretion with the court in each case as it arises, no case certainly has been brought to our attention in which a judgment has been opened for this purpose only, for a defendant who has had his day in court. The cases specially relied on by the court below and by appellees, Herman v. Rinker, 106 Pa. 121; Sossong v. Rosar, 112 Pa. 197; and Ellinger's App., 114 Pa. 505, were judgments entered on warrants of attorney, fourteen, ten and eleven years old, respectively, and in all of them there were other circum-

stances besides the mere lapse of time set out as grounds of the application. But the action of the court was based, as is very clearly set out by our Brother GREEN, in Sossong v. Rosar, on the fact that the defendant had had no hearing. If, on a suit in the usual course, the defendant comes in and confesses judgment, he could hardly be heard afterwards to say the debt was barred by the statute. He has made an acknowledgment of record that the debt is due, and that he will pay it. As already shown, what the debtor might have done his executrix may do in his place; and even if she had thereafter asked for the opening of the judgment, it could not have been granted without some equitable grounds to aid it. It is unnecessary to consider the offers of evidence at the trial.

Judgment reversed, order opening original judgment rescinded, and that judgment reinstated.

### IRWIN'S ESTATE.

OPINION, MR. JUSTICE MITCHELL:

The reversal of the judgment in Woods v. Irwin, ante, 278, filed herewith, requires the reversal of this also. Appellants' judgment in the Common Pleas, being reinstated, must take its share of the fund in the Orphans' Court.

Decree reversed, and procedendo awarded.

